## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

THE BANK OF NOVA SCOTIA,        )
                                   )
            **Plaintiff,**             )
       **v.**                           )
                                   )   **Civil Action No. 2014-0062**
**MARION LEE BROOKS a/k/a**     )
**MARION L. BROOKS a/k/a**       )
**MARION BROOKS,**              )
                                 )
            **Defendant.**        )
_____)

**Attorney:**
**Johanna Harrington, Esq.,**
St. Thomas, U.S.V.I.
     *For Plaintiff*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Second Motion for Default Judgment" filed by Plaintiff, Bank of Nova Scotia ("BNS" or "Plaintiff") against Defendant Marion Lee Brooks a/k/a Marion L. Brooks a/k/a Marion Brooks ("Brooks") in this debt and foreclosure action. (Dkt. No. 14). For the reasons discussed below, the Court will grant in part and deny in part Plaintiff's Second Motion for Default Judgment.

### I.   BACKGROUND

On September 16, 2014, Scotiabank filed a Complaint against Brooks. (Dkt. No. 1). The Complaint alleges that, on April 7, 2010, Brooks executed a Promissory Note (the "Note") in which she promised to pay the principal sum of $200,000.00, together with interest at the rate of 5.625% per annum, in equal monthly installments of $1,151.31 beginning on June 1, 2010. (*Id.*, ¶¶ 6, 7). Repayment of the Note was secured by a first priority mortgage (the "Mortgage"), also executed on April 7, 2010 by Brooks, encumbering the following real property (the "Property") owned by Brooks, as described in the Quitclaim Deed:

Plot 55-A of Estate Frederikshaab, West End Quarter, St. Croix, US Virgin Islands, consisting of 0.446 US Acres, more or less, as more fully shown in O.L.G. drawing No. 3158 dated September 7, 1973.

(*Id.* ¶¶ 5, 8; Dkt. No. 1-1).

The Complaint goes on to say that Brooks defaulted under the terms and conditions of the Note and Mortgage by failing to make the payment due on March 8, 2014 and all subsequent payments. (*Id*. ¶¶ 10, 11). BNS gave notice of default to Brooks by correspondence dated May 19, 2014, advising her that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage. *(Id.* ¶ 12). Following Brooks' failure to cure, BNS elected to accelerate the loan, and the entire unpaid principal sum with unpaid accrued interest and late charges became immediately due and payable, which BNS calculated, as of September 9, 2014, to be $192,760.97. (*Id.* ¶ ¶ 16-18, 20). BNS asks that judgment include all unpaid principal and interest due and payable, plus interest accruing thereafter; attorney's fees and other expenses incurred to enforce payment of the Note; foreclosure of the Property and sale of the Property to satisfy the Note; and the recovery of any deficiency from Brooks. (*Id*. at pp. 4-5).

Brooks was served with the Summons and Complaint on October 1, 2014 in Suffolk, Virginia. (Dkt. No. 3). She did not appear or otherwise answer the Complaint. BNS filed an Application for Entry of Default against Brooks on December 15, 2014 (Dkt. No. 5), and the Clerk of Court entered default against her on March 19, 2015. (Dkt. No. 8).

On May 7, 2015, BNS filed its initial Motion for Default Judgment. (Dkt. No. 9). The Court denied it without prejudice as deficient, in that it did not set forth how each default judgment factor had been satisfied, and the particulars, with support, of how the amounts sought were calculated. (Dkt. No. 10). On March 14, 2016, BNS filed the instant Second Motion for Default Judgment which incorporates a Memorandum of Law (Dkt. No. 14), an Affidavit of Indebtedness (Dkt. No. 14-4), and a Declaration of Counsel. (Dkt. No. 14-7).

In its Memorandum, BNS states that the supporting documents show that Brooks executed the Note in which she promised to pay BNS the sum of $200,000.00, with interest at the rate of 5.625% per annum in monthly installments of $1,151.31; and that repayment of the loan was secured by the Mortgage on the Property that Brooks also executed. (*Id.* at 5-6). The Memorandum further provides that because Brooks defaulted under the terms and conditions of the Note and Mortgage by failing to pay the April 1, 2014 payment and all subsequent payments, BNS—as holder of both instruments—elected to accelerate the loan, declaring all amounts due. (*Id.*). BNS refers to its previously filed application for fees and costs to support its request for attorney's fees. (Dkt. Nos. 9-2, 9-3, 9-4). BNS also asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). (Dkt. No. 14 at 7-8).

With regard to the amount of judgment it seeks, the Memorandum cited the Affidavit of Indebtedness, which sets forth the amounts due. BNS filed a Supplement to its Second Motion of Default Judgment on March 15, 2016 (Dkt. Nos. 15, 15-1), to replace the Affidavit of Indebtedness (Dkt. No. 14-4) that accompanied BNS's Motion.[1]

The supplemental Affidavit of Indebtedness is signed by Jeffrey Stanley, a Foreclosure Supervisor for Cenlar FSB. (Dkt. No. 15-1, ¶ 1). In his position, Mr. Stanley is familiar with the type of records maintained by Cenlar in connection with the loan made to Brooks. The information in his Affidavit was taken from his personal knowledge of Cenlar's procedures for creating the records. (*Id.*, ¶¶ 2-4). Based on his review of the records, Mr. Stanley avers that BNS owns and holds the Note and Mortgage. (*Id.* ¶ 6). The Affidavit sets forth the amounts due and owing BNS

---

[1] BNS explained that, after filing the Second Motion, it learned that BNS's mortgage servicer, Cenlar FSB, is servicing the Brooks loan for BNS, and it is "more accurate to state that it is Cenlar FSB's records, rather than Plaintiff's records, which support the damages alleged by Plaintiff." (Dkt. No. 15).

3

through March 15, 2016: $186,772.42 in unpaid principal balance; interest from March 1, 2014 through March 15, 2016 of $21,414.97; late charges of $230.28; escrow advances (hazard insurance and tax payments) of $6,806.64; property inspection fees for 2014 of $48.75; and recoverable balance of $10,130.98 consisting of additional property inspections for 2014-2016 of $243.75, attorney's fees of $4,858.23, property preservation fees of $4,249.00, and a Broker's Price Opinion of $780.00; and a total indebtedness of $225,404.04. (*Id.* ¶ 9).[2] Mr. Morton provides no figure regarding the per diem interest rate, although the attached supporting document indicates that the per diem rate is $28.78. (Dkt. No. 14-4 at 24).

Attached to the Memorandum is a Declaration of BNS's Counsel, Johanna Harrington, Esq., who states that service upon Brooks was effected by BNS's prior counsel; Brooks did not answer the Complaint or otherwise respond; based on her date of birth, Brooks is an adult; and upon information and belief, Brooks is competent because Harrington understood from prior BNS counsel that Brooks offered BNS a Deed in Lieu of Foreclosure, but BNS did not accept her offer. (Dkt. No. 14-7). Harrington also avers that, as reflected in the Status Reports from the Department of Defense Manpower Data Center, Brooks is not an active duty member of the U.S. Armed Forces. (*Id.*; Dkt. No. 14-6).

With regard to attorney's fees and costs, BNS submitted a Declaration of Counsel to which was attached a "slip listing"—billing summary—of attorney time expended in prosecuting the action, as well as expenses taxable as costs under 5 V.I.C. § 541. (Dkt. No. 9-2). The attorney's fees expended as of May 6, 2015 were $1,770.00 and expenses were $765.73. (Dkt. Nos. 9-3, 9-4). Counsel anticipated that she would be expending additional time in preparing the Praecipe and

---

[2] Although BNS claimed in its Supplement to its Second Motion for Default Judgment that the "figures and amounts in both affidavits [of indebtedness] are the same," the recoverable balance indicated in the first affidavit was $9,515.98, reflecting attorney's fees of $4,243.23, while the recoverable balance in the second supplemental affidavit was $10,130.98, reflecting attorney's fees of $4,858.23. (Dkt. Nos. 15, 15-1).

Writ of Execution, such that a reasonable award of attorney's fees would be $3,470.00 and reasonable costs incurred would be $1,390.73. (Dkt. No. 9-2).

## II.  DISCUSSION

### A.  Default Judgment Standard

In a motion for default judgment, "a district court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. . . . Rather, the plaintiff must prove that he is entitled to the damages sought." *Polidoro v. Saluti*, __ F. App'x __, 2017 WL 90348, at *1 (3d Cir. Jan. 10, 2017) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). In the context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemembers] Civil Relief Act.

*United States v. Woods,* 2016 WL 6471448, at \*6 (D.V.I. Oct. 31, 2016) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 55(b). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

## B. Analysis

### 1. Default Judgment

BNS has satisfied the requirements necessary to obtain a default judgment against Brooks. It has shown that Brooks was personally served (Dkt. No. 3), and she has not appeared; and that default was entered against her by the Clerk of Court (Dkt. No. 8). In addition, in her Declaration, Plaintiff's attorney, Johanna Harrington, Esq., averred that, based on Brooks' date of birth, she is an adult over the age of eighteen; and that "[u]pon information and belief, Defendant is competent because I understand from prior counsel that she offered Plaintiff a Deed in Lieu of Foreclosure, but it did not accept her offer." (Dkt. No. 14-7, ¶ 7); *see FirstBank Puerto Rico v. Jaymo Properties, LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (holding that bank attorney's affidavit stating in good faith that defendant was a competent adult is sufficient to find that a non-appearing defendant is not a minor or incompetent person for the purposes of obtaining a default judgment). Plaintiff also provided a copy of a Status Report from the Department of Defense Manpower Data Center showing that Brooks is not an active member of the military service as defined in the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 14-6).

The Court has considered the *Chamberlain* factors and finds that the prejudice to BNS resulting from Brooks' breach of her contractual obligations, and the apparent absence of a litigable defense weigh in favor of the Court granting default judgment. Furthermore, Brooks'

default is a result of her culpable conduct as evidenced by her failure to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

However, the Court finds that, notwithstanding its earlier ruling that the initial Motion for Default Judgment was deficient, and the accompanying Order directing BNS to explain "the particulars, with support, of how the amounts [of damages] sought were calculated" and requiring supplemental briefing to cure those deficiencies (Dkt. No. 10), some of the deficiencies have not been cured. The Affidavit of Indebtedness provides that the amounts due and owing BNS through March 15, 2016 are: $186,772.42 in unpaid principal balance; interest from March 1, 2014 through March 15, 2016 of $21,414.97; late charges of $230.28; escrow advances (hazard insurance and tax payments) of $6,806.64; property inspection fees of $48.75; and recoverable balance of $10,130.98 consisting of additional property inspections of $243.75, attorney's fees of $4,858.23, property preservation fees of $4,249.00, and a Broker's Price Opinion of $780.00; and a total indebtedness of $225,404.04. (Dkt. No. 15-1). Thirty-four pages of supporting documentation are attached, consisting of the Note, the Mortgage, default letters, and internal loan documents containing various categories of amounts and figures. However, there is no explanation for what the $4,249.00 in "property preservation fees" consists of. Without such an explanation, the Court will disallow those fees.

The Court also notes that the Affidavit of Indebtedness provided no per diem interest rate. The Court was required to wade through the attached supporting documentation to determine that

7

the per diem rate is $28.78. (Dkt. No. 15-1 at 25).[3] The Court will award $28.78 in per diem interest from March 16, 2015 up to and including the date this Judgment is issued, and interest at the federal statutory rate thereafter, pursuant to 28 U.S.C. § 1961(a), until the Judgment is satisfied.

### 2. Attorney's Fees and Costs

BNS has also requested $4,858.23 in attorney's fees and expenses as part of its recoverable balance. However, the Declaration of Counsel and "slip listing" accounts for only $1,770.00 in attorney's fees and $765.73 in costs as of May 6, 2015. (Dkt. Nos. 9-2, 9-3, 9-4). In his Declaration, counsel anticipated $2,425.00 in additional expenditures for attorney's fees and costs to complete the foreclosure proceedings. (Dkt. No. 9-2). These additional expenditures, together with the amounts requested for work already performed, would be close to the $4,858.23 figure for attorney's fees and expenses which counsel has requested.[4] However, the Court does not award anticipatory damages for attorney's fees and expenses not yet incurred. Rather, the Judgment and Order permits counsel to seek an additional award of attorney's fees, costs, and expenses to be determined upon appropriate application filed with the Court prior to entry of an order confirming the sale of the Property.

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b).

---

[3] Plaintiff is advised that, in future submissions, the per diem rate should be included in the Affidavit of Indebtedness with the appropriate citation to where in the record the rate is substantiated.

[4] The $1,770.00 in attorney's fees, $765.73 in expenses, and anticipated $2,425.00 in additional attorney's fees and expenses total $4,960.73. This is close enough to the $4,858.23 in total attorney's fees and expenses requested in the Affidavit of Indebtedness such that the Court construes the $4,858.23 amount as a request for the current plus anticipated attorney's fees and expenses.

Under the terms of the Mortgage, BNS is entitled to collect all expenses incurred in pursuing foreclosure of the Mortgage, including reasonable attorney's fees and costs of court. (Dkt. No. 14-3-2, ¶ 22). Under the terms of the Note, if there is a default and the loan is accelerated, Flagstar has the right to be paid back for its costs and expenses in enforcing the Note, and such expenses include reasonable attorney's fees. (Dkt. No. 14-2, ¶ 6(E)). The Mortgage also provides that it is governed by federal law "and the law of the jurisdiction in which the Property is located"—the Virgin Islands. (Dkt. No. 14-3, ¶ 16). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10. The Court will address the two steps involved in assessing the reasonableness of attorney's fees in reverse order.

Addressing the hourly rate first, Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). BNS Attorney Samuel T. Grey charged $300.00 per hour from September 8, 2014 to May 6, 2015. (Dkt. No. 9-3). The Court concludes that the $300.00 per hour rate charged by Attorney Grey is reasonable and falls within the scope of rates for such services.

With regard to the reasonableness of the time expended, BNS seeks compensation for 5.90 hours of work billed in this matter. (Dkt. No. 9-3). Based on the Court's review of the documentation provided, the Court finds that the hours billed were reasonably expended to take this case from the filing of the Complaint through the filing of the first Motion for Default Judgment. Accordingly, the Court will award attorney's fees of $1,770.00.

With regard to costs, under the terms of the Note, Lyles agreed to pay "all of [BNS's] costs and expenses" in the event of any default in the payment of the Note. (Dkt. No. 14-2, ¶ 6(E)). Under the terms of the Mortgage, BNS is entitled "to collect all expenses incurred in pursuing the remedies provided in [this paragraph]. . . including. . . costs of court." (Dkt. No. 14-3, ¶ 22). Here too, because the Mortgage is "governed by federal law and the law of the jurisdiction in which the Property is located" (Dkt. No. 14-3, ¶ 16), the Court will look to Virgin Islands law for guidance in determining appropriate costs and expenses.

Title 5, Section 541(a) defines what costs are "allowed in a civil action."[5] "Expenses" are not defined by statute, nor are they defined in the Mortgage or other loan documents.

---

[5] The costs allowed are: "(1) Fees of officers, witnesses, and jurors; (2) Necessary expenses of taking depositions which were reasonably necessary in the action; (3) Expenses of publication of the summons or notices, and the postage when they are served by mail; (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure; (5) Necessary expenses of copying any public record, book, or document used as evidence on the trial; and (6) Attorney's fees as provided in subsection (b) of this section." 5 V.I.C. § 541(a).

The Supreme Court of the Virgin Islands has opined that costs and expenses do not cover the same outlays of funds in a case. In *Terrell v. Coral World,* 55 V.I. 580, 2011 WL 3492575 (V.I. July 20, 2011), the court noted that Title 5, Sections 541 through 547, "govern the award of costs to a prevailing party in civil litigation." *Id.* at *2. The Court in *Terrell* observed: "It is well-established that when a statute authorizes taxation of costs [referring to 5 V.I.C. § 541(a)], 'costs are not synonymous with expenses unless expressly made so by statute.'" *Id.* at 591 n.14 (quoting *Benda v. Fana*, 227 N.E.2d 197, 201 (Ohio 1967)). The Supreme Court further explained that "limiting 'costs' to what is specifically provided for in a fee-shifting statute is necessary in order to avoid 'absurd situations' that the legislature could not have intended, such as placing a litigant 'with the burden of paying exorbitant professional witness fees which may very well exceed the amount of the verdict itself.'" *Id.* (quoting *Benda*, 227 N.E.2d at 201). Further, in order for costs to be reimbursed, they must be reasonable. *See Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014) (opining that prevailing party in civil action may "recover reasonable costs and attorney's fees" under statute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands statute permits reimbursement for reasonable fees and costs). The only statutory costs that BNS seeks are attorney's fees.

Reimbursement of expenses, on the other hand, is not permitted statute but by contract, the terms of which are regularly enforced by courts. *See Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271 (3d Cir. 2004) ("[C]ourts are obligated to enforce contracts as they are made by the parties and not to create additional terms out of thin air."); *Rainey v. Hermon*, 2011 WL 4738534, at *6 (V.I. Oct. 6, 2011) (enforcing the terms of a contract, even for legal fees and administrative costs, "unless the fee is unreasonable."). Pursuant to Rule 211.1.5 of the Virgin Islands Rules of

Professional Conduct, adopted by the Supreme Court of the Virgin Islands and effective February 1, 2011, fees and expenses awarded in the Virgin Islands must be "reasonable."

BNS is seeking reimbursement of $765.73 for the following expenses: title report fees, recording fee, filing fee, service of process, and certified mailings. (Dkt. No. 9-4). The Court finds that the expenses consisting of title report fees, recording fees, filing fees, and service of process fees were reasonably incurred in this debt and foreclosure action, and will be reimbursed. However, the requested $14.73 in certified mail expenses will not be reimbursed as they constitute overhead costs, *Creative Minds, LLC v. Reef Broadcasting, Inc.*, 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014). Accordingly, the Court will award a total of $751.00 in expenses.

### III.   CONCLUSION

Plaintiff Bank of Nova Scotia has satisfied the requirements necessary for a default judgment against Defendant Marion Lee Brooks a/k/a Marion L. Brooks a/k/a Marion Brooks. The Court will grant in part Plaintiff's Second Motion for Default Judgment (Dkt. No. 14) on the debt and foreclosure causes of action in its Complaint. In this regard, the Court will award $218,818.17 in damages, plus $28.78 in per diem interest from March 16, 2016 up to and including the date of this Judgment (March 14, 2017), amounting to $10,475.92, for a total award of $229,294.62. In addition, the Court will award $1,770.00 in attorney's fees and $751.00 in expenses, for a total award of $2,521.00 in attorney's fees and expenses through May 6, 2015. The Court will deny in part the Plaintiff's Second Motion for Default Judgment to the extent that the Court will disallow $4,249.00 in property preservation fees and $2,337.23 in attorney's fees and expenses.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: March 14, 2017                          _____/s/_____
                                             WILMA A. LEWIS
                                             Chief Judge